# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

SCOTT VERTUCCI,                          :
     Plaintiff,                       :
                                      :
v.                                       :       Case No: 3:05cv1307 (PCD)
                                      :
JAYSON ORVIS, JAMIS JOHNSON,             :
DANELL JOHNSON, DEON STECKLING,:
SAMUEL J. SPENDLOVE, SPENCE              :
BINGHAM, VICTOR LAWRENCE,                :
JOHN HEATH, ERIC STEPHENSON,             :
PAUL JOHNSON, JOHN J. DIAMOND            :
and LANE RYAN P. WATERS,                 :
     Defendants.                      :

## RULING ON MOTIONS TO DISMISS, STAY, OR TRANSFER

Defendants John Heath, Lane Ryan P. Waters, Paul Johnson, John J. Diamond, and Eric

Stephenson (the "Attorney Defendants") move to dismiss or stay, Defendant Victor Lawrence

moves to stay, dismiss, or transfer, Defendants Jayson Orvis, Deon Steckling, Samuel J.

Spendlove, and Spence Bingham (the "Orvis Defendants") move to dismiss, and all Defendants'

move to stay discovery pending resolution of the Attorney Defendants' and Defendant

Lawrence's petitions to compel arbitration in the United States District Court for the District of

Utah and for a protective order. For the reasons stated herein, the Attorney Defendants' Motion

to Dismiss or Stay [Doc. No. 52] is **granted** in part, Defendant Lawrence's Motion to Stay,

Dismiss, or Transfer [Doc. No. 53] is **granted** in part, the Orvis Defendants' Motion to Dismiss

[Doc. No. 54] is **granted** in part, and all Defendants' Motion to Stay Discovery [Doc. No. 60] is

**denied as moot**.

## I.       BACKGROUND

Plaintiff brings claims based on violations of the Credit Repair Organizations Act, 15 U.S.C. § 1679 <u>et</u> <u>seq.</u> ("CROA"), the Connecticut Credit Clinics Act, Conn. Gen. Stat. § 36a-700, and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b.  Specifically, Plaintiff alleges that he hired the Lexington Law Firm ("Lexington") to clear his credit report of certain negative entries (Compl. ¶¶ 4, 135), and contends that Defendants "use instrumentalities of interstate commerce . . . in businesses which purport to perform the services of improving, correcting, changing, or deleting adverse entries on a consumer's credit record." (<u>Id</u>. ¶ 5.) Plaintiff claims that Defendants, in connection with their agreement to provide credit repair services, violated the CROA by making untrue or misleading statements to a consumer reporting agency, <u>see</u> § 1679b(a)(1), by misrepresenting their services, <u>see</u> § 1679b(a)(3), by engaging in acts, practices, or courses of business which constitute or result in the commission of a deception on its customers, Plaintiff, or the consumer reporting agencies, <u>see</u> § 1679b(a)(4), by charging and receiving money for the performance of its agreement before the service was fully performed, <u>see</u> § 1679b(b), and by failing to include the information required by § 1679d(b) ("Count One"). (Compl. ¶ 135.) Plaintiff also contends that Defendants violated the Connecticut Credit Clinics Act, Conn. Gen. Stat. § 36a-700, which is a per se violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, by engaging in the unfair and deceptive practices alleged in the Complaint ("Count Two").  (<u>Id</u>. ¶ 136.)

This action was transferred to this Court from the Honorable Janet C. Hall, United States District Judge for the District of Connecticut, on May 4, 2006.  An Order to Show Cause was issued on March 31, 2006, ordering Plaintiff to show cause as to why this case: (1) should not be transferred to the United States District Court for the District of Utah or (2) should not be

administratively closed, pending arbitration, and with the right of any party to reopen in aid of, or

upon completion of, the arbitration proceeding.  See Mar. 31, 2006 Order to Show Cause [Doc.

No. 93].  Plaintiff responded on or about April 17, 2006 and Defendants responded, in three

separate memoranda, on or about April 27, 2006.

      Lexington is a d/b/a designation for John Heath, Attorney at Law, PLLC, a professional

limited liability company organized under Utah law. (See Heath Aff. ¶ 4, Exh. 1 to Attorney

Defs.' Mot. Dismiss.)  Lexington's office is located in Salt Lake City, Utah. (See id.)  Prior to

June 2004, Lexington was the d/b/a designation for another firm organized as a sole

proprietorship under Defendant Victor Lawrence, but was acquired by the Heath PLLC, which

assumed Lexington's business, in June 2004. (See id. ¶ 5.) Plaintiff is a natural person who

resides in Connecticut. (See Compl. ¶ 3.)

      Plaintiff's Complaint, the allegations of which will be accepted as true for purposes of

this Ruling, asserts that Plaintiff is

> the victim of an elaborate system designed to undermine accurate credit reporting and
> violate the [CROA], wherein defendants intentionally profit from obtaining payment
> before credit repair services are fully performed, intentionally solicit consumers on
> the representation that a law firm is involved ("Lexington Law Firm") and that
> consumers will benefit by being represented by a law firm, intentionally and
> systematically deceive credit bureaus about the source and nature of the dispute
> correspondence, and intentionally deceive consumers before and during the course
> of their representation.

(Compl. ¶ 2.).  Plaintiff also asserts that all of the defendants in this action "have been associated

with and profited from the 'Lexington Law banner.'"[1] Plaintiff, however, does not sue Lexington

---

[1]     According to Plaintiff's Complaint, Lexington Law Firm's web site proclaimed, as of August 9,
2005, that "[f]or over fourteen years, credit correction attorneys have practiced under the
Lexington Law banner, establishing us as the largest and most trusted credit report repair firm in
America.  We have reinvented and improved the art of credit report repair over and over
again—giving the Lexington client absolutely the best results anywhere." (Compl. ¶ 6.)

directly, but sues the defendants individually, as persons allegedly connected to Lexington. According to the Complaint, Defendant Jayson Orvis, a non-lawyer, is the owner of the trade name "Lexington Law firm" and owner and operator of the Lexington organization, Defendant Deon Steckling owns an interest in the Lexington operation, and Defendant Samuel Spendlove has an interest in the proceeds and profits of the operation. (Id. ¶¶ 8, 10-11.)  Defendants Paul Johnson, John J. Diamond, Eric Stephenson, Lane Ryan P. Waters, and John C. Heath, all attorneys admitted to practice in the State of Utah, are alleged to be members and associates of Lexington. (Id. ¶¶ 12-16.)  Defendant Victor Lawrence, also an attorney admitted to practice law in Utah, was the registered agent for the trade name Lexington Law and the Directing Attorney for Lexington for seven years.  (Id. ¶¶ 17-18.)  Defendant Jamis Johnson, also an attorney, was, along with Jayson Orvis, a founder of Lexington and its original Directing Attorney.  (Id. ¶ 20.) According to the Complaint, Jamis Johnson withdrew from formal participation in Lexington on or about May 1, 1999, at which point Victor Lawrence was appointed as his successor. (Id. ¶¶ 24-25.)  Finally, Defendant Spence Bingham provides internet services for Lexington and participates in its profits.  (Id. ¶ 22.)

Plaintiff's relationship with Lexington began on or about April 8, 2004, when he retained Lexington to perform credit-repair work on his behalf. (Compl. ¶ 47.)  As part of the retention process, Plaintiff executed, via online signature, the Lexington Retainer, which provided that "[a]ny legal or equitable action concerning this agreement or the relationship created by it shall be brought only in Salt Lake City, Utah." (See id. ¶ 51; Lexington Retainer § k, Exh. 1A to Attorney Defs.' Mot. Dismiss.)  The retainer contained a forum selection clause, pursuant to which both "[Plaintiff] and Lexington agree to submit to the personal and exclusive jurisdiction

4

of courts located within Salt Lake County, Utah." (Lexington Retainer § k.)  The retainer also

included an arbitration clause, which provided that:

> You agree that any dispute arising between you and Lexington shall be settled in Salt
> Lake City, Utah, by binding arbitration pursuant to the Rules of the American
> Arbitration Association.  You agree to abide by such rules pertaining to the selection
> of arbitrators.  The arbitrators have no right to change this agreement.  You agree that
> any decision rendered shall be filed and adopted by any court having proper
> jurisdiction.

(Id. § l.)

According to Plaintiff's Complaint, between April 2004 and March 2005, Lexington

disputed a total of 92 "adverse entries" on Plaintiff's credit reports, resulting in the removal of

nine adverse entries and one favorable report. (Compl. ¶ 84.)  During this period, in June 2004,

the Heath PLLC acquired the Lexington d/b/a/ designation from Victor Lawrence and assumed

Plaintiff's case under the Lexington Retainer. (Heath Aff. ¶ 5; see also Compl. ¶ 68.)

On or about March 24, 2005, Plaintiff and Lexington entered into a second retainer

agreement in connection with Plaintiff's decision to upgrade to the Concord service. (See Compl.

¶¶ 85-87; Waters Aff. ¶ 12, Exh. 2 to Attorney Defs.' Mot. Dismiss.)  The Concord Retainer also

provided that it would be performed exclusively in the State of Utah, and although it did not

contain an arbitration clause, it did contain a forum selection clause identical to that contained in

the Lexington Retainer. (Concord Retainer at 5, Exh. 1B to Attorney Defs.' Mot. Dismiss.)

Plaintiff emailed Lexington to terminate the relationship on June 29, 2005 and on July 5,

2005, was notified that his account had been cancelled. (Compl. ¶¶ 101, 103.)  Plaintiff filed his

Complaint in this action on August 18, 2005.

The Attorney Defendants have filed notices indicating that they—along with Defendant

Victor Lawrence, in a consolidated action—petitioned the United States District Court for the District of Utah, Case No. 2:05-cv-00892-DB, to compel arbitration of the claims Plaintiff filed against them in this Court and that, pursuant to the forum selection clauses in the Lexington and Concord Retainers and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, the Utah court entered an order granting the Attorney Defendants' petition and compelling arbitration.[2]

## II.    DISCUSSION

Defendants argue that this Court should administratively close the case as to all Defendants and should dismiss the action or transfer it to the Utah District Court pursuant to the forum selection clauses in Plaintiff's contracts and 28 U.S.C. § 1404(a), so that the federal court that has compelled arbitration and which Plaintiff's contracts specify should be the forum for any judicial proceedings—the Utah District Court—will have the case for any further judicial proceedings. (Defs.' Mem. Supp. Admin. Closure 1.)  Plaintiff argues that the case should neither be dismissed, transferred, nor administratively closed, on the ground that only six of the ten defendants obtained an arbitration order in Utah. (Pl.'s Resp. to Order to Show Cause 1.)

### A.    Arbitration Clause

As previously indicated, the United States District Court for the District of Utah issued an order granting the Attorney Defendants' petition and compelling arbitration.  The broad,

---

[2]    Default was entered against Scott Vertucci in Utah District Court for failure to appear and on January 3, 2006, a default judgment compelling arbitration was entered. See Heath v. Vertucci, No. 2:05-cv-00892-DB (D. Utah Jan. 5, 2006).  Vertucci subsequently moved to reopen the default judgment, to transfer the two consolidated cases to Connecticut, to dismiss for lack of jurisdiction, and to reconsider the judgment of the court compelling arbitration.  The Utah court denied Vertucci's motions, holding that (1) there is a basis for personal jurisdiction over Vertucci based on his activities in the State of Utah and his consent to jurisdiction and venue there; (2) the default judgment should not be reopened as Vertucci failed to set forth any reason warranting relief; and (3) alternatively, even if the court were to reopen the default judgment, it would reaffirm, on the merits, its order granting the petitions to compel arbitration.  See Heath v. Vertucci, No. 2:05-cv-00892-DB (D. Utah Apr. 5, 2006).

written arbitration clause in the Lexington Retainer falls under the FAA, which provides that written arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA reflects "a strong federal policy favoring arbitration," Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998), mandating that "district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 84 L. Ed. 2d 158, 105 S. Ct. 1238 (2d Cir. 1985) (emphasis in original). This Court, however, lacks the authority to compel the parties to proceed to arbitration in accordance with the terms of the arbitration agreement because that agreement provides for arbitration in Utah. This Court's authority to compel arbitration under Section 4 of the FAA is restricted to arbitration proceedings that occur within this District. See 9 U.S.C. § 4 ("The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.").

Although this Court lacks authority to compel arbitration, it possesses the authority to stay the litigation. Section 3 of the FAA "plainly requires that a district court stay litigation where issues presented in the litigation are the subject of an arbitration agreement." Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 984 (2d Cir. 1996) (quoting Kroll v. Doctor's Assocs., 3 F.3d 1167, 1171 (7th Cir. 1993)); 9 U.S.C. § 3. Specifically, the statute states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3; see also Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 269 F. Supp. 2d 356, 363 (S.D.N.Y. 2003) (holding that a federal court lacking authority to compel arbitration outside its district may still determine that the dispute nonetheless remains "referable to arbitration" elsewhere, and must then order a stay, pursuant to § 3 of the FAA, leaving the parties free to pursue their contractual rights and remedies in the appropriate venue); Snyder v. Smith, 736 F.2d 409, 420 (7th Cir. 1984) (when a district court is presented with a petition to compel arbitration outside of the district, "the district court should dismiss the petition or, upon motion, stay its proceedings.").

This Court's authority to stay the litigation is not altered simply because Plaintiff has sued the individual defendants rather than Lexington itself.  See Arnold v. Arnold Corp., 920 F.2d 1269, 1282 (6th Cir. 1990) (following the "well-settled principle affording agents the benefits of arbitration agreements made by their principal").  The Second Circuit has explicitly provided that "employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement," reasoning that "[i]f it were otherwise, it would be too easy to circumvent the agreements by naming individuals as defendants instead of the [employers] themselves." Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1360 (2d Cir. 1993); see also Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003) (holding that the limited theories upon which the Second Circuit is willing to enforce an arbitration agreement against a nonsignatory include "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel") (citations omitted); Arnold, 920 F.2d at 1281 (noting that if a party "can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint, or signatory parties in their individual

8

capacities only, the effect of the rule requiring arbitration would, in effect, be nullified") (internal quotation marks and citations omitted).  Similarly, the Second Circuit has found that when a plaintiff's action against a company's owners and agents is simply "a bald attempt to evade its duty to arbitrate," a district court may properly enjoin that action. Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996) (citing ACLI Gov't Sec., Inc. v. Rhoades, 963 F.2d 530, 532-33 (2d Cir. 1992)); see also Kroll v. Doctor's Associates, Inc., 3 F.3d 1167, 1171-72 (7th Cir. 1993) (court stayed direct claims against co-owners of a corporation because the suit "had no plausible purpose other than to evade its duty to arbitrate its disputes with [the corporation]")..

Plaintiff agrees that the action should be stayed as to the Attorney Defendants and Defendant Lawrence, but argues that it should proceed against the four remaining nonlawyer defendants because they have not shown that they were in an employment relationship, a surety relationship, or an affiliate relationship with the signatory. (See Pl.'s Resp. to Order to Show Cause at 1, 3-4.)  Plaintiff's argument, however, is belied by the allegations he made in his own Complaint, claiming that all of the defendants "have been associated with and profited from the 'Lexington Law Banner.'" (Compl. ¶ 7.)  Moreover, Plaintiff's allegations against the defendants stem entirely from their actions as agents, officers, owners, or employees of Lexington.  The substantive allegations in Plaintiff's Complaint refer only to "Lexington" or the "Lexington Law Firm" and not to any of the individual defendants, all of whom are contended by Plaintiff to be "associated with" Lexington.  Having lumped the defendants together and alleged that all of the defendants were "associated with" Lexington and thus responsible for Lexington's actions, Plaintiff cannot now claim that the defendants have an insufficient relationship with Lexington or with one another. See, e.g., Denney v. BDO Stillman, L.L.P., 412 F.3d 58 (2d Cir. 2005)

("Having alleged in this RICO action that the Deutsche Bank and BDO defendants acted in concert to defraud plaintiffs . . . . plaintiffs cannot now escape the consequences of those allegations by arguing that the Deutsche Bank and BDO defendants lack the requisite close relationship . . . ."); <u>Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration International, Inc.</u>, 198 F.3d 88, 98 (2d Cir. 1999) (holding that the party attempting to resist arbitration was estopped from doing so because it had treated arguably non-signatory companies and their signatory assignees "as a single unit" in its complaint in a related lawsuit); <u>Carroll v. Leboeuf, Lamb, Greene & MacRae, L.L.P.</u>, 374 F. Supp. 2d 375, 378 (S.D.N.Y. 2005) (holding that because "the amended complaint lumps [defendants] together . . . and treats them throughout as a unit," "plaintiffs' attempt to avoid arbitration by pointing to their distinctness is unpersuasive").  Accordingly, Second Circuit precedent affording agents, officers, owners, or employees the benefit of arbitration agreements made by their principal applies and is controlling here.

The four remaining non-attorney defendants are not signatories to the arbitration agreement, however, "under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where . . . the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." <u>JLM Indus. v. Stolt-Nielsen SA</u>, 387 F.3d 163, 177 (2d Cir. 2004) (internal quotation marks and citation omitted); <u>accord</u> <u>Thomson-CSF, S.A. v. American Arbitration Assoc.</u>, 64 F.3d 773, 779 (2d Cir. 1995) (collecting cases); <u>Norcom Elecs. Corp. v. CIM USA Inc.</u>, 104 F. Supp. 2d 198, 203 (S.D.N.Y. 2000).  Similarly, the <u>JLM</u> court held that "where the merits of an issue between the parties was bound up with a contract binding one party

10

and containing an arbitration clause, the 'tight relatedness of the parties, contracts and controversies' was sufficient to estop the bound party from avoiding arbitration." <u>Id</u>. (quoting <u>Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.</u>, 271 F.3d 403, 407 (2d Cir. 2001)). Therefore, because Plaintiff's Complaint completely intertwines his claims against all of the defendants, (<u>see, e.g.</u>, Compl. ¶¶ 2, 7, 8, 10, 11, 22, 135), he is now estopped from denying that the arbitration clause in his agreement with Lexington—which the Utah District Court has found to be valid, enforceable, and binding—controls the claims against all of the defendants. Accordingly, following this same reasoning, it is appropriate for this Court to stay litigation proceedings, pursuant to § 3 of the FAA, against a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.

Alternatively, even if the case were not subject to a stay under § 3, this Court may stay this case—even against those Defendants not directly subject to arbitration—under principles of comity, in order to promote the efficient use of judicial resources, and pursuant to its inherent authority to effectively manage its docket.  <u>See</u> <u>Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.</u>, 342 U.S. 180, 96 L. Ed. 200, 72 S. Ct. 219 (1952) (holding that when two cases presenting the same issues are pending in different federal district courts, a federal court has the power to stay its proceedings in order to promote the efficient use of judicial resources); <u>Landis v. North Am. Co.</u>, 299 U.S. 248, 254-55, 81 L. Ed. 153, 57 S. Ct. 163 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain

an even balance."); <u>WorldCrisa Corp. v. Armstrong</u>, 129 F.3d 71, 76 (2d Cir. 1997) (holding that

"district courts, despite the inapplicability of the FAA, may stay a case pursuant to 'the power

inherent in every court to control the disposition of the causes on its docket with economy of

time and effort for itself, for counsel, and for litigants'") (quoting <u>Nederlandse</u>

<u>Erts-Tankersmaatschappij, N. V. v. Isbrandtsen Co.</u>, 339 F.2d 440, 441 (2d Cir. 1964)); <u>Sea</u>

<u>Spray Holdings</u>, 269 F. Supp. 2d at 366 (holding that, even if a party is not bound by an

arbitration provision, a district court's inherent power to effectively manage its docket provides

an independent basis to stay litigation in contemplation of arbitration proceeding among other

parties to the litigation outside of the district).  Moreover, courts within our circuit have

suggested that "the coverage of § 3 itself might extend to encompass nonparties to arbitration

agreements with relationships or interests in the arbitrable dispute, apparently in light of the

district court's inherent authority to otherwise achieve the same result." <u>Sea Spray Holdings</u>, 269

F. Supp. 2d at 366; <u>Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S</u>, 943 F.2d 220, 224 (2d Cir.

1991) (noting that the Seventh Circuit had interpreted § 3 as applying to nonparties to arbitration

agreements, and recognizing that the law on this matter in the Second Circuit was in

development).

     Where, as here, the parties have submitted to arbitration, the district court may stay the

proceedings, as discussed above, or, alternatively, where all of the claims are arbitrable, the court

may dismiss the action instead of staying it. <u>See</u> <u>Lewis Tree Serv., Inc. v. Lucent Techs., Inc.</u>,

239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002) ("Because all of [the plaintiff's] claims are subject to

arbitration, no useful purpose will be served by granting a stay of [the plaintiff's] claims and thus

its action against the defendants is dismissed."); <u>Salim Oleochemicals v. M/V Shropshire</u>, 278

12

F.3d 90, 92-93 (2d Cir. 2002) (discussing trial courts' ability to stay proceedings or dismiss the action in favor of arbitration); <u>Seus v. John Nuveen & Co., Inc.</u>, 146 F.3d 175, 178 (3d Cir. 1998) ("If all the claims involved in an action are arbitrable, the court may dismiss the action instead of staying it."); <u>Alford v. Dean Witter Reynolds, Inc.</u>, 975 F.2d 1161, 1164 (5th Cir. 1992) (same). The broad arbitration clause appears to encompass all of the claims at issue here, however, it is not necessary to decide whether a stay or dismissal is more appropriate here as this Court has determined that dismissal is appropriate based on the presence of the forum selection clause.

### B.    Forum Selection Clause

Defendants argue that the action should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(3) or 12(b)(6), because of the presence of the mandatory forum selection clause specifying that any lawsuit arising from Plaintiff's retention of Lexington would be brought only in a court in Salt Lake County, Utah.  Alternatively, Defendants argue that the case should be transferred to Utah district court, pursuant to 28 U.S.C. § 1404(a), where the parties have agreed to jurisdiction and venue and which has already concluded that the dispute must be submitted to arbitration. (Attorney Defs.' Mem. Supp. Mot. Dismiss 23-25.)

### 1.    <u>Bremen</u> Analysis

The enforcement of forum selection clauses is governed by federal law.  <u>Jones v. Weibrecht</u>, 901 F.2d 17, 19 (2d Cir. 1990).  Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 10, 32 L. Ed. 2d 513, 92

S. Ct. 1907 (1972).[3] Such clauses are to be "given full effect" absent "fraud, undue influence, or overweening bargaining power." Bremen, 407 U.S. at 12-13.  A forum selection clause can bind the parties even where the agreement in question is a form consumer contract and not subject to negotiation. Carnival Cruise Lines v. Shute, 499 U.S. 585, 589-95, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991).  The party resisting a forum selection clause "must overcome a substantial presumption in favor of enforcement." Indymac Mortgage Holdings, 167 F. Supp. 2d 222, 244 (D. Conn. 2001).

The Second Circuit has construed Bremen's "unreasonable" exception narrowly and has not hesitated to enforce forum selection clauses, even in contracts of adhesion and even when doing so would result in inconvenience for the nonmoving party.  For example, in Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 9 (2d Cir. 1995), the Second Circuit found that even though the forum selection clause was in "fine print," its language was "clear and unambiguous" and thus enforceable, as "the existence of the forum-selection clause was reasonably communicated to the plaintiff."  Moreover, the Effron court emphasized that "we are concerned here with a forum of contract, not of convenience" and rejected the plaintiff's arguments regarding the inconvenience of a foreign forum.  Id. at 10; see also New Moon Shipping Co. v. MAN B&W Diesel AG, 121 F.3d 24, 32 (2d Cir. 1997) ("The party claiming unreasonableness of a forum selection clause bears a heavy burden; in order to escape the contractual clause, he must show 'that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical

---

[3]   A forum selection clause is "unreasonable" under Bremen only if Plaintiff can demonstrate that: "(1) [its] incorporation into the agreement was the result of fraud or overreaching; (2) . . . the complaining party "will for all practical purposes be deprived of his day in court," due to the grave inconvenience or unfairness of the selected forum; (3) . . . the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) . . . the clauses contravene a strong public policy of the forum state." Roby, 996 F.2d at 1363 (quoting Bremen, 407 U.S. at 18).

purposes be deprived of his day in court.'") (quoting <u>Bremen</u>, 407 U.S. at 18); <u>Indymac Mortg.</u>

<u>Holdings, Inc. v. Reyad</u>, 167 F. Supp. 2d 222, 244 (D. Conn. 2001) ("[T]o invalidate a forum

selection clause, the resisting party must overcome a substantial presumption in favor of

enforcement.") (internal quotation marks and citation omitted).

The forum selection clause at issue here is enforceable.  The clause is reasonable;

Lexington had a good faith basis for selecting Utah as its forum for disputes with clients since

Utah is Lexington's principal place of business and the place where its employees and relevant

documents are located.  There is no evidence presented here that there was any "fraud, undue

influence, or overweening bargaining power" as discussed in <u>Bremen</u>, 407 U.S. at 12-13.

Plaintiff does not argue that he will be deprived his day in court, that Utah law may deprive him

of a remedy,[4] or that the clause contravenes Connecticut public policy.[5]  Plaintiff argues that the

clause, because it provides for litigation to proceed in a "distant" forum, is unconscionable, (Pl.'s

Opp. Mot. Dismiss [Doc. No. 63] 11-12), however, the Second Circuit has established that "a

forum is not necessarily inconvenient because of its distance from pertinent parties or places if it

---

[4]      Plaintiff has not suggested that if this suit were dismissed, the statute of limitations would foreclose refiling in the alternative forum.

[5]      Plaintiff cites several California decisions in support of his argument that the forum selection clause is unenforceable.  Although California courts have found, in some cases, that forum selection clauses contravene California public policy, <u>see</u> <u>Yu v. Signet Bank/Virginia</u>, 69 Cal. App. 4th 1377, 1389, 82 Cal. Rptr. 2d 304 (1999); <u>Barquis v. Merchants Collection Ass'n</u>, 7 Cal. 3d 94, 108, 101 Cal. Rptr. 745 (1972), Connecticut courts have generally upheld forum selection clauses, absent a showing of fraud or overreaching, <u>see</u> <u>United States Trust Co. v. Bohart</u>, 197 Conn. 34, 41-42, 495 A.2d 1034 (1985); <u>see also</u> <u>Fairfield Lease Corp. v. Romano's Auto Service</u>, 4 Conn. App. 495, 498, 495 A.2d 286 (1985) ("When the court selected is reasonably appropriate, and where there is no indication that the parties had such greatly disproportionate bargaining power that the agreement could be regarded as unconscionable, the tendency is to give effect to such agreements") (internal quotation omitted). Because the Second Circuit's practice is to uphold forum selection clauses in the absence of a clear showing of "fraud, undue influence, or overweening bargaining power," and because California law has no applicability to this case, the cases cited by Plaintiff do not alter the decision.

is readily accessible in a few hours of air travel." <u>Effron</u>, 67 F.3d at 10 (citation omitted).  The

forum selection clauses at issue here were clearly identified and written and Plaintiff had three

days to cancel each retainer with no restriction on his ability to take his business elsewhere. (<u>See</u>

Defs.' Reply 9.)  Viewing the facts in the light most favorable to Plaintiff, this Court finds that he

has not met his burden of showing that this case provides the "exceptional" circumstances in

which the forum selection clause should not be enforced. <u>See</u> <u>Stewart</u>, 487 U.S. at 33 (Kennedy,

J., concurring) ("a valid forum-selection clause [should be] given controlling weight in all but the

most exceptional circumstances").

Because venue in Utah was clearly expressed in the Lexington and Concord Retainers,

dismissal or transfer of this case is warranted.  <u>See</u> <u>Seward v. Devine</u>, 888 F.2d 957, 962 (2d Cir.

1989) (affirming dismissal where forum selection clauses "plainly provided that venue was to be

limited solely to the state court in Delaware County"); <u>GMAC Commer. Credit v. Dillard Dep't</u>

<u>Stores</u>, 198 F.R.D. 402, 408 (S.D.N.Y. 2001) (finding that dismissal was warranted where

"venue in Arkansas was clearly expressed in the forum selection clause").  "Determining whether

to dismiss or transfer depends upon which remedy is most consistent with the forum selection

clause at issue." <u>GMAC Commer. Credit</u>, 198 F.R.D. at 409; <u>see also</u> <u>Licensed Practical Nurses,</u>

<u>Technicians & Healthcare Workers v. Ulysses Cruises, Inc.</u>., 131 F. Supp. 2d 393, 409 (S.D.N.Y.

2000) (noting that both dismissal and transfer are appropriate means of enforcing a forum

selection clause and holding that district courts "must weigh in each case whether dismissal or

transfer is the most efficient and just means of enforcing the clause").  <u>Carnival Cruise Lines</u> and

its progeny provide that dismissal may be appropriate where a party disregards a forum selection

clause and brings suit in a noncompliant venue, especially where the forum selection clause

16

allows suit both in state and federal courts. Indymac Mortg. Holdings, 167 F. Supp. at 247-48.

The forum selection clause at issue here permits suit to be brought either in federal district court

or state court, indicating that dismissal would be appropriate, as it would preserve Plaintiff's

right to file suit in either state or federal court.  See GMAC Commer. Credit, 198 F.R.D. at 409

(holding that although the defendant may still remove a case filed in state court to federal court,

"this court cannot and should not rule in anticipation of what defendant may or may not do");

Indymac Mortgage Holdings, 167 F. Supp. at 247-28.  Moreover, Plaintiff does not argue in

favor of transfer over dismissal. See Freedman v. Am. Online, Inc., No. 3:03cv1048 (PCD), 2004

U.S. Dist. LEXIS 1388, at *2 (D. Conn. Jan. 30, 2004) (construing the plaintiff's request "that if

the Court declines to dismiss the claims it should transfer the case" as a statement "that, if the

forum selection clause was upheld, [the plaintiff] would select a Virginia federal court as

opposed to a state court").

In this case, however, there is already a related case pending in Utah district court.  In

order to avoid the need and cost to Plaintiff of starting anew, this Court finds, under the

circumstances, that transfer would be more appropriate than dismissal.

### 2.    Section 1404(a) Analysis

Plaintiff's argument that the § 1404(a) factors weigh in favor of venue in Connecticut is

unconvincing.  A district court may transfer venue, in the interest of justice, "for the convenience

of parties and witnesses." 28 U.S.C. § 1404(a). The movant bears the burden of establishing the

propriety of transfer by clear and convincing evidence.  Excelsior Designs, Inc. v. Sheres, 291 F.

Supp. 2d 181, 185 (E.D.N.Y. 2003) (citing Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir.

1950)).  In determining whether to transfer venue, district courts must engage in a two-part

inquiry, asking (1) whether the action "might have been brought" in the proposed transferee

forum and, if so, (2) whether the transfer promotes convenience and justice. See Schertenleib v.

Traum, 589 F.2d 1156, 1161 (2d Cir. 1978); Invivo Research, Inc. v. Magnetic Resonance Equip.

Corp., 119 F. Supp. 2d 433, 436 (S.D.N.Y. 2000).  The parties do not dispute that this case could

have been brought in the District of Utah.  Therefore, the sole inquiry with respect to venue

transfer is whether such transfer promotes convenience and the interests of justice.

Plaintiff argues that Connecticut is a more appropriate venue, however, the Supreme

Court has clearly provided that "the presence of a forum-selection clause such as the parties

entered into in this case will be a significant factor that figures significantly in the district court's

calculus."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22

(1988).  The forum selection clause has been found to be valid and controlling in this case,

however, even if this Court were to engage in a § 1404(a) analysis, it is not clear that the factors

would weigh in favor of venue in Connecticut.

A district court has broad discretion to transfer a case pursuant to 28 U.S.C. § 1404(a),

and although there exists a presumption in favor of plaintiff's choice of forum, it is only one of

the factors relevant for consideration.  Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S. Ct. 544,

99 L. Ed. 789 (1955); see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255, 102 S. Ct. 252, 70

L. Ed. 2d 419 (1981) (noting that the "strong presumption in favor of the plaintiff's choice of

forum . . . may be overcome only when the private and public interest factors clearly point

towards trial in the alternative forum").  Other factors that district courts should consider include

the presence of a forum selection clause, "the convenience of the witnesses and those

public-interest factors of systemic integrity and fairness that, in addition to private concerns,

18

come under the heading of 'the interest of justice.'" Stewart, 487 U.S. at 30-31.  Appropriate

"factors of public interest" for courts to consider include, *inter alia*, "administrative difficulties,"

the "local interest in having localized controversies decided at home," and the appropriateness of

having "the trial of a diversity case in a forum that is at home with the state law that must govern

the case." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S. Ct. 839, 91 L. Ed. 1055 (1947).

Plaintiff argues that it would be more convenient to litigate in Connecticut.  Although the

forum selection clause may not be determinative on the issue of venue, the parties' agreement on

the appropriate forum for their disputes is entitled to significant weight.  Stewart, 487 U.S. at 29.

This Court has found that the forum selection clause is enforceable and represents the parties'

decision to locate all litigation and/or arbitration between them in the State of Utah, which has a

clear connection to the dispute as the place where Lexington's primary place of business is

located.  Courts considering the effect of forum selection clauses have held that they can be

determinative of the issues of convenience and justice as between the parties.  See Kodak

Polychrome Graphics, LLC v. Southwest Precis. Printers, Inc., No. 3:05cv330 (MRK), 2005 U.S.

Dist. LEXIS 23359, at *6 (D. Conn. Oct. 7, 2005) ("[B]ecause such a negotiated designation

creates legitimate expectations, the contract designation is conclusive of the interests of

convenience and justice as between the parties and in most instances the clause will be given

controlling weight.") (quoting TUC Elecs., Inc. v. Eagle Telephonics, Inc., 698 F. Supp. 35, 39

(D. Conn. 1988)); Orix Credit Alliance, Inc. v. Mid-South Materials, 816 F. Supp. 230, 234

(S.D.N.Y. 1993) (a "forum selection clause is determinative of the convenience to the parties");

Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989) ("a valid

forum-selection clause may waive a party's right to assert his own inconvenience as a reason to

transfer a case").

Plaintiff argues that the parties' relative financial means favors venue in Connecticut, because "[t]he financal hardship and difficulty for a consumer to travel to Utah and engage Utah counsel is indisputable," whereas "defendants' joint venture is taking in at least $2,902,686 per month." (Pl.'s Opp. Mot. Dismiss [Doc. No. 63] 14.)  In Carnival Cruise Lines, the Supreme Court noted that a large company whose business reaches many states, like Lexington here, has a "special interest in limiting the fora in which it potentially could be subject to suit," and that consumers indirectly benefit from forum selection clauses via the savings that the company "enjoys by limiting the fora in which it may be sued." Carnival Cruise Lines, 499 U.S. at 593-94. Although Lexington may have greater financial resources than Plaintiff, "to let this factor alone override the forum selection clause would in effect invalidate all forum selection clauses in consumer contracts, which clearly was not the [Supreme] Court's intent in Carnival Cruise Lines." Freedman v. Am. Online, Inc., 294 F. Supp. 2d 238, 246 (D. Conn. 2003).

One of Plaintiff's claims arises under Connecticut statutory law.  The Lexington and Concord Retainers, however, provide that Plaintiff's relationship with Lexington "shall be governed exclusively by Utah State law and Federal law governing the Utah Federal Courts, without regard to conflict of law provisions." (Lexington Retainer § k; see also Concord Retainer 5.)  Given that Utah law governs the parties' relationship, this factor weighs in favor of transfer. See Gulf Oil, 330 U.S. 501, 508-09 (discussing the appropriateness of having "the trial of a diversity case in a forum that is at home with the state law that must govern the case").  To the extent that Connecticut law applies, however, "federal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State."  BRM Indus. v. Mazak Corp., 42 F.

Supp. 2d 176, 180 (D. Conn. 1999).  Accordingly, courts in Connecticut and Utah are equally poised to address any state law concerns that may arise.

### C.    Personal Jurisdiction

The Attorney Defendants and the Orvis Defendants also argue that the action should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(2), on the basis that this Court lacks personal jurisdiction over them. (Attorney Defs.' Mem. Supp. Mot. Dismiss 24-33; Orvis Defs.' Mem. Supp. Mot. Dismiss 8-17.)  Because it has already been determined that dismissal is appropriate on other grounds, however, the Court need not reach this issue.

### D.    Other Arguments

Defendant Lawrence also argues that this Court should dismiss the Complaint, as against him, on the basis that Plaintiff has failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). (Lawrence Mem. Supp. Mot. Dismiss 4-7.)  Similarly, the Orvis Defendants argue that Plaintiff's Complaint fails to state a claim upon which relief can be granted such that (a) Plaintiff cannot allege and prove any set of facts that amount to a violation of CROA; and (b) the Complaint fails to meet Rule 9(b)'s requirement that allegations of fraud and misrepresentation be plead with particularity.[6] (Orvis Defs.' Mem. Supp. Mot. Dismiss 17-22.)  Because this Court has determined that suit is not appropriate in this venue, it will reserve any decision with respect to these issues for the Utah court.

## III.   CONCLUSION

For the foregoing reasons, the Attorney Defendants' Motion to Dismiss or Stay [Doc. No.

---

[6]    The Orvis Defendants argue that Rule 9(b) applies because the CROA claims are based on misrepresentations.

52], Defendant Lawrence's Motion to Stay, Dismiss, or Transfer [Doc. No. 53], and the Orvis Defendants' Motion to Dismiss [Doc. No. 54] are **granted** insofar as they request transfer on the basis of the forum selection clause.  Accordingly, Defendants' Motion to Stay Discovery [Doc. No. 60] is **denied as moot**.  This case is hereby transferred to the United States District Court for the District of Utah.  The Clerk shall close the case.

SO ORDERED.

Dated at New Haven, Connecticut, May  30 , 2006.

/s/
—————————————————
Peter C. Dorsey, U.S. District Judge
United States District Court